Case 5:25-cv-00104   Document 18   Filed on 09/10/25 in TXSD   Page 1 of 6
United States District Court
Southern District of Texas
**ENTERED**
September 10, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **ISRAEL ADONAY SAGASTIZADO SANCHEZ,** § § § | |
| Petitioner, § § | |
| VS. § | CIVIL ACTION NO. 5:25-CV-00104 |
| § | |
| **KRISTI NOEM, *et al.*,** § § | |
| Respondents. § | |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Israel Adonay Sagastizado Sanchez's Emergency Motion for a Temporary Restraining Order. (Dkt. 16.) Sagastizado is seeking an emergency temporary restraining order to prevent Respondents from removing him before he receives the due process he is entitled to under federal regulations and the Fifth Amendment Due Process Clause. (*Id.*) For the reasons stated below, the motion is GRANTED.

## Background

Sagastizado is a noncitizen from El Salvador. (Dkt. No. 7, Attach. 2 at 1.)[1] In 2024, a U.S. immigration judge ("IJ") ordered Sagastizado removed from the United States. (Dkt. 7, Attach. 3 at 1.) The IJ also granted his request for relief: withholding of removal under 8 U.S.C. § 1231(b)(3). (*Id.*) Withholding of removal prohibits the government from removing a noncitizen to a country where it is more likely than not that the individual would be persecuted on the basis of a protected ground. *See* 8 C.F.R. § 1208.16(b). Sagastizado was released from Immigration and Customs Enforcement ("ICE") custody on an Order of Supervision after those proceedings. (Dkt. 7, Attach. 4 at 1.) On May 6, 2025, Sagastizado appeared for a scheduled ICE check-in when he

---

[1] The Parties have labeled their sub-filings as "Exhibits." However, the Court will use "Attachment" to refer to these sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

was served a Notice of Revocation of Release, (Dkt. 7, Attach. 5), and was detained by ICE, (Dkt. 7, Attach. 6.)

Sagastizado filed his Petition for Writ of Habeas Corpus on June 25, 2025. (Dkt. 1.) He claims that Respondents have violated federal regulations and procedures and the Due Process Clause of the Fifth Amendment, that Respondents have no legal basis to detain him, and that he has been subject to unreasonable detention in violation of 8 U.S.C. § 1231(a)(6). (*Id.* at 8–10.)

While the Petition has been pending, Sagastizado expressed fear of removal to Mexico and received a Reasonable Fear Interview ("RFI"). (Dkt. 16, Attach. 1 at 1; Dkt. 16, Attach. 2.) Having received no determination following the RFI and receiving notice that Respondents intend to remove Sagastizado on September 12, 2025, he filed the instant motion for a temporary restraining order. (Dkt. 16, Attach. 1 at 1.)

## Legal Standard

### A.   Temporary Restraining Order

The standard for obtaining a temporary restraining order ("TRO") is the same as that for obtaining a preliminary injunction. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The plaintiff must establish the following four elements to obtain a TRO: "(1) a substantial likelihood that plaintiff will succeed on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the [TRO] is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the [TRO] may do to defendant, and (4) that granting the [TRO] will not disserve the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

## Discussion

As a preliminary matter, this Court has jurisdiction to grant a temporary restraining order. First, courts have jurisdiction to determine their jurisdiction. *See Lockhart v. El Centro del Barrio*, 2025 WL 1161464, at *2 (W.D. Tex. Apr. 21, 2025) (citing *United States v. Ruiz*, 536 U.S. 622, 622 (2002)). "No court shall have jurisdiction to hear any cause . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252 (g). "[D]istrict courts . . . have distinguished between challenges to [Immigration and Customs Enforcement]'s discretion to execute a removal order, which are barred, and challenges

to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d, 137, 152 (W.D.N.Y. May 2, 2025) (citing *Torres-Jurado v. Biden*, No. 19 Civ. 3595, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (collecting cases)). Here, Sagastizado is not asking this Court to review the agency's decision to execute his removal order. (Dkt. 16, Attach. 1 at 2.) Rather, he is asking this Court to review the process due to him *after* the agency decided to execute his removal order. (*Id.*). As a result, the Court's jurisdiction is not barred by section 1252(g).

### A.    Substantial Likelihood of Success on the Merits

Sagastizado has shown a substantial likelihood of success on the merits of his Fifth Amendment due process claim. Noncitizens have a right to meaningful notice and opportunity to be heard before being deported to a third country. *See, e.g.*, *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019); *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 387 (D. Mass. 2025). Federal regulations plainly provide the extent of process due to noncitizens expressing fear of persecution or torture once ordered removed. 8 C.F.R. § 1208.31.

Sagastizado presents clearly that Respondents have not afforded him the full extent of due process required by federal regulations. After Sagastizado's RFI conducted by an asylum officer, he received no determination or decision. (Dkt. 16, Attach. 1 at 1.) It was not until Respondents filed an advisory with this Court that Sagastizado's counsel learned that the RFI was likely negative because ICE intends to remove him at the end of the week. (Dkt. 15; Dkt. 16, Attach. 1 at 2.) Relevant regulation provides that: "If the asylum officer determines that the noncitizen has not established a reasonable fear of persecution or torture, the asylum officer shall inform the noncitizen in writing of the decision and shall inquire whether the noncitizen wishes to have an immigration judge review the negative decision." 8 C.F.R. § 1208.31(f). Even though Sagastizado did not have an opportunity to request this review because he never received his denial, his counsel promptly contacted the Department of Homeland Security, requesting IJ review and a copy of the denial. (Dkt.16, Attach. 4 at 1.) Regulations also provide that:

> The asylum officer's negative decision regarding reasonable fear shall be subject to de novo review by an immigration judge upon the noncitizen's request. . . . If the noncitizen requests review of the asylum officer's negative decision regarding reasonable fear, the asylum officer shall serve the noncitizen with a Form I-863, Notice of Referral to Immigration Judge. The record of determination, including copies of the Form I-863,

> Notice of Referral to Immigration Judge, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination. In the absence of exceptional circumstances, such review shall be conducted by the immigration judge within 10 days of the filing of the Form I-863, Notice of Referral to Immigration Judge, and the complete record of determination with the immigration court.

8 C.F.R. § 1208.31(g). Assuming that the absence of a denial and Respondents' intent to remove Sagastizado later this week is a result of a negative determination on his RFI, Sagastizado is entitled to an IJ review of his RFI.

Disregard for the regulations controlling this process deprives Sagastizado of his opportunity to be heard before he is removed to a third country and violates his rights under the Constitution. *See D.V.D.*, 778 F. Supp. at 365 (finding that notice and "an opportunity to explain why such a deportation will likely result in their persecution, torture, and/or death" constitute the "small modicum of process" required by the Constitution). Because Sagastizado is likely to succeed on the merits of his due process claim, the Court concludes that Sagastizado has met his burden on the first factor.

### B.   Irreparable Harm

The irreparable harm factor likewise weighs in Sagastizado's favor. While it is true that "the burden of removal alone cannot constitute the requisite irreparable injury," *Nken v. Holder*, 556 U.S. 418, 435 (2009), Sagastizado shows more. In a recent string of decisions regarding the removal of noncitizens under the Alien Enemies Act ("AEA"), the Supreme Court found that "[t]he prospect of irremediable error means Petitioners' 'interests at stake are accordingly particularly weighty.'" *W.M.M. v. Trump*, ––– F.4th –––, 2025 WL 2508869, at *21–22 (5th Cir. 2025) (quoting *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025)) (finding sufficient risk of irreparable harm where Petitioners demonstrate risk of harm if improperly removed without notice and an opportunity to be heard); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury."). While Petitioner is not being removed under the AEA, he has expressed fear of torture and persecution on the basis that removal to Mexico would result in refoulement to El Salvador. (Dkt. 1 at 7.) This risk compounds in light of Sagastizado's evidence that federal regulations have not been followed and that he has been denied the extent of his opportunity to be

heard before removal. (Dkt. 16, Attach. 1.) For these reasons, the Court finds that the Petitioner has shown irreparable harm.

### C. Balance of Equities & Public Interest

The balance of equities and the public interest favor Sagastizado. Here, since the government is the non-movant, the third and fourth elements fuse. *Nken*, 556 U.S. at 435. Sagastizado's entitlement to fair removal procedures in the face of possible persecution outweighs the government burden. *See Nunez*, 537 F. Supp. at 587 (stating that protecting people who face persecution goes "to the very heart of the principles and moral precepts upon which this country and its constitution were founded"). Where the government fails to uphold statutory and constitutional rights, it can make no comparable claim to harm from an injunction. *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action"); *see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022). For these reasons, the final fused factor favors the Petitioner.

### D. Bond

The Court exercises its discretion to waive the requirement to post a bond under Rule 65(c). Before an injunction may issue, a movant for preliminary relief must "give[ ] security" to redress the costs of a wrongful injunction. Fed. R. Civ. P. 65(c). But the movant need only post "an amount that the [district] court considers proper." *Id*. That last provision vests vast discretion in the trial court; indeed, a district court "may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman*, S.A., 569 F.2d 300, 303 (5th Cir. 1978) (per curiam) (citations omitted); *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (reaffirming *Corrigan Dispatch*).

### Conclusion

For the reasons stated above, Petitioner's Emergency Motion for a Temporary Restraining Order, (Dkt. 16), is GRANTED.

It is therefore ORDERED that the Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby RESTRAINED from:

(a) transferring Petitioner out of this judicial district; and

(b) removing Petitioner from the United States without review of his Reasonable Fear Interview by an Immigration Judge.

This Temporary Restraining Order shall remain in effect until **September 24, 2025**. A Preliminary Injunction Hearing will be set for this matter in a separate ORDER.

IT IS SO ORDERED.

SIGNED this September 10, 2025.

Diana Saldaña
United States District Judge