United States District Court
Southern District of Texas
**ENTERED**
October 02, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **ISRAEL ADONAY SAGASTIZADO** | § | |
| **SANCHEZ** | § | |
| | § | **CIVIL ACTION NO. 5:25-CV-00104** |
| **VS.** | § | |
| | § | |
| **KRISTI NOEM,** *et al.* | § | |

### MEMORANDUM AND ORDER

Pending before the Court is Petitioner's Motion for Preliminary Injunction. (Dkt. 20.) Petitioner requests that Respondents be enjoined from removing him to a third country without review of his Reasonable Fear Interview by an Immigration Judge. (Dkt. 20.)

For the following reasons, Petitioner's Motion for Preliminary Injunction (Dkt. 20) is GRANTED.

### Background

#### A. Factual Background

#### 1. Sagastizado's Immigration Proceedings

Petitioner Israel Adonay Sagastizado Sanchez ("Petitioner" or "Sagastizado") is a native and citizen of El Salvador. (Dkt. 24 at 1.) In 2012, at around 14 years old, he left El Salvador and came to the United States. (*Id.*, Attach. 2.)[1] In 2018, he was served with a Notice to Appear in front of an Immigration Judge (IJ) as a noncitizen present in the United States who had not been admitted or paroled. (*Id.*, Attach 1 at 1.) In July 2021, he filed an I-589 application for asylum and withholding of removal. (*Id.*, Attach. 2.) After several years, on February 22, 2024, an IJ denied

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Petitioner's application for asylum and ordered him removed to El Salvador but simultaneously granted withholding of removal under 8 U.S.C. § 1231(b)(3), prohibiting his removal to El Salvador. (Dkt. 1, Attach. 1.) The IJ granted withholding after finding it was more likely than not that Petitioner would be persecuted if he returned to El Salvador. (*Id*.); *see* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. At no point during the proceedings was Mexico named as a possible country of removal. (Dkt. 1, Attach. 1; Dkt. 24, at 2.)

Withholding of removal is a form of immigration relief that requires the Government not to remove a noncitizen to a country where he has shown a sufficient likelihood of persecution, though it does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, in practice, relatively few noncitizens granted withholding of removal are removed to alternative countries. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

In Petitioner's case, after having been granted withholding of removal, he was released from Immigration and Customs Enforcement (ICE) custody on May 6, 2024, on an order of supervision. (Dkt. 7, Attach. 4.) One year later, on May 6, 2025, Petitioner appeared for his regularly scheduled check-in with ICE. (*See id*.) At the check-in, he was detained by ICE and served with a Notice of Revocation of Release, a Warrant of Removal, a Notice of Custody Determination, and a Notice to Alien of File Custody Review. (Dkt. 24 at 2; Dkt. 7, Attachs. 5, 6, 7, 8.) The Notice of Revocation of Release informed Petitioner that the "Government of Mexico has agreed to accept your repatriation to facilitate your removal from the United States." (Dkt. 7,

Attach. 5.) That same day, a family member was informed that Petitioner was in ICE custody and was given his personal belongings. (Dkt. 1 at 7.) Since that day, Petitioner has remained in ICE custody. He is currently detained at the Webb County Detention Center in Laredo, Texas. (*Id.* at 2.)

On July 17, 2025, in order to seek withholding and Convention Against Torture (CAT) protections from Mexico, Petitioner filed an emergency motion for stay of removal and a motion to reopen his proceedings in immigration court. (Dkt. 24, Attachs. 3, 4.) On July 18, 2025, an IJ granted a temporary stay of removal. (*Id.*, Attach. 5.) Then on August 1, 2025, the IJ denied the motion to reopen and dissolved the temporary stay. (*Id.*, Attach. 6.) On August 19, 2025, Petitioner filed a motion to reconsider that was denied by the IJ the next day. (*Id.*, Attachs. 7, 8.) Petitioner then appealed the IJ's decisions denying his motion to reopen to the Board of Immigration Appeals (BIA). (*Id.*, Attach. 9.) Petitioner moved the BIA for an emergency stay of removal, but the BIA has yet to rule on the stay of removal. (*Id.* at 4.)

Additionally, on August 15, 2025, Petitioner expressed fear of removal to Mexico and requested a Reasonable Fear Interview (RFI). (Dkt. 16, Attachs. 1, 2, 3.) U.S. Citizenship and Immigration Services (USCIS) carried out Petitioner's RFI on August 29, 2025. (*Id.*, Attach. 1.) Petitioner then requested an IJ review of his denied RFI. (*Id.*, Attach. 5.)

## 2. Third Country Removals

In February of 2025 the Department of Homeland Security issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under the Convention Against Torture (CAT) "to determine the viability of removal to a third country and accordingly whether the alien should be re-detained." February 18, 2025 DHS Policy Directive on Expedited Removal and

Nondetained Docket (Feb. 18, 2025), https://perma.cc/T8TV-GT84 ("February DHS Policy Directive"); *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025).

In March of 2025, the Secretary of Homeland Security, Kristi Noem, issued a memorandum entitled *Guidance Regarding Third Country Removals* ("March Guidance"). (Dkt. 21, Attach. 2.) The March Guidance provides instructions to immigration agencies on how to initiate removal to a third country (a country not designated in a removal order) for individuals who have been granted withholding of removal and are subject to a removal order under sections "240, 241(a)(5), or 238(b) of the Immigration and Nationality Act." (*Id.*, Attach. 2 at 1.)

The March Guidance provides that noncitizens may be removed to a third country that "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and "[i]f the United States has received such assurances, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." (*Id.*, Attach. 2 at 1–2.)

The March Guidance goes on to say that if the United States has not received those assurances or does not believe them to be credible, the Department of Homeland Security (DHS) must start the third country removal process by informing the noncitizen of removal to the third country. (*Id.*, Attach. 2 at 2.) If the noncitizen affirmatively expresses a fear of removal to the third country to USCIS, then the noncitizen will be referred for a screening by a USCIS officer for eligibility for protection under 8 U.S.C. § 1231(b)(3) and the CAT for the country of removal. (*Id.*) After this initial screening, if the USCIS officer does not believe that it is more likely than not the noncitizen will be persecuted on a statutorily protected ground or tortured in the country of removal, the noncitizen will be removed. (*Id.*) If a USCIS officer determines that the individual

does meet this standard, and the noncitizen was previously in proceedings in Immigration Court, ICE will be informed and may file a motion to reopen with the Immigration Court or BIA, or "ICE may choose to designate another country for removal." (*Id.*)

In *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. On April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction. *D.V.D.*, 778 F. Supp. 3d at 394. The class consists of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. The preliminary injunction required DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94.

However, on June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction in *D.V.D. Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (June 23, 2025). The Supreme Court did not provide reasoning for its entry of stay. *See id.* After the stay was entered, the Director of ICE issued guidance to all ICE employees on July 9, 2025, rescinding all guidance implementing the preliminary injunction issued in *D.V.D.* and reinstating the March Guidance. (Dkt. 21, Attach. 1.)

**B. Procedural Background**

On July 17, 2025, Petitioner filed a habeas petition with this Court seeking his release from ICE custody at the Webb County Detention Center in Laredo, Texas, where he has been detained pending his removal from the United States. (Dkt. 1.) He claims that Respondents have violated federal regulations and procedures and the Due Process Clause of the Fifth Amendment, that Respondents have no legal basis to detain him, and that he has been subject to unreasonable detention in violation of 8 U.S.C. § 1231(a)(6). (*Id.* at 8–10.) On August 20, 2025, the Court issued an order granting Petitioner's Unopposed Motion to Suspend Briefing Deadline Pending Adjudication of Petitioner's Motion for Leave to Serve Document Request. (Dkt. 11.) The Order also required Respondents to notify Petitioner's counsel and the Court of any anticipated or planned transfer of Petitioner outside of the Southern District of Texas at least five days before any such transfer. (*Id.*) On September 8, 2025, Respondents advised the court that they intended to remove Petitioner to Mexico on September 12, 2025. (Dkt. 15) ("Sagastizado will be escorted to the port of entry and will be allowed to enter Mexico on foot.").

Petitioner moved for a Temporary Restraining Order (TRO) on September 9, 2025, requesting that Respondents be enjoined from removing him to Mexico before carrying out an IJ review of his negative RFI determination. (Dkt. 16.) On September 10, 2025, the Court granted a 14-day TRO to that effect. (Dkt. 18.) The following day, the Court set a preliminary injunction hearing for September 23, 2025. (Dkt. 19.) Petitioner filed a motion for preliminary injunction on September 12, 2025. (Dkt. 20.) Respondents filed their Response in Opposition on September 22, 2025, the day before the preliminary injunction hearing. (Dkt. 21.) During the hearing on September 23, 2025, the Court continued the hearing to Monday, September 29, 2025, and extended the TRO to September 29, 2025. (Dkt. 23.) The Court further ordered the parties to submit supplemental briefing on the pending Motion for Preliminary Injunction. (*Id.*) The Parties

submitted additional briefing on September 26, 2025. (Dkts. 24, 25.) The Court held a Preliminary

Injunction Hearing on September 29, 2025. During the hearing, the Court extended the TRO while

the Motion for Preliminary Injunction was under advisement and until the issuance of this Order.

### C. Legal Background

The relevant legal background has been accurately presented by the district court in *D.V.D.*:

### 1. Removal Proceedings

When the Government wants to remove an individual, the normal path is
through removal proceedings, requiring an evidentiary hearing before an
Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not
only whether an individual may be removed from the United States but also to
*where* he may be removed. In the first instance, the alien is entitled to select a
country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the
alien does not do so, the IJ will designate the country of removal and may also
designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the alien is also entitled to seek various protections, including
asylum, withholding of removal, and Convention Against Torture ("CAT")
protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary.
Others are mandatory, meaning that protection must be given if the conditions are
met. Withholding of removal is a mandatory form of protection preventing
deportation to the country or countries where an IJ finds that the individual is more
than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see
also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General
has no discretion to deny relief to a noncitizen who establishes his eligibility [for
withholding of removal or CAT protections]."). CAT protection is a mandatory
protection against deportation to a country where the IJ finds that the individual is
likely to be tortured. *See* Foreign Affairs Reform and Restructuring Act of 1998
("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681–822

(1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16–18, 1208.16–18; 28 C.F.R. § 200.1; *see also Moncrieffe*, 569 U.S. at 187 n.1.

### 2. Reinstatement or Withholding-Only Proceedings

Alternatively, the U.S. Department of Homeland Security ("DHS") may reinstate a prior order of removal for an alien it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id*. DHS may also issue administrative removal orders to individuals whom DHS determines are not lawful permanent residents and who have an aggravated felony conviction. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1.

While in both processes aliens are barred from pursuing nearly all avenues of relief from removal, aliens may still seek protection through withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT. 8 C.F.R. §§ 238.1(f)(3), 241.8(e). If the alien demonstrates a reasonable fear of persecution or torture, the alien is placed in "withholding-only proceedings" before an IJ where they can only seek withholding of removal and/or CAT protection. 8 C.F.R. §§ 208.31(b), (e); *see also* 8 U.S.C. § 1231(a)(5) (providing that an alien subject to reinstatement "is not eligible and may not apply for any relief under [the Immigration and Nationality Act ("INA")]"); 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings ... shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal.").

Withholding of removal and CAT protection only affect to *where* the alien may be removed, rather than *whether* the alien may be removed; thus, even if an alien prevails on his withholding or CAT claim, the removal order remains valid and enforceable, albeit not executable to the specific country as to which the alien has demonstrated a likelihood of persecution or death. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a

grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

**3. Third-Country Removals**

Because the removal proceedings happen on one track, while withholding and CAT proceedings happen on another track, a situation may arise where the Government has an order of removal but no country that an IJ has authorized for that removal.

In certain circumstances, where the Government may not remove an alien to any country covered by that alien's order of removal, the Government may still remove the alien to any "country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii). These are called "third-country removals." As relevant here, a specific carve-out prohibits deportation to countries in which the alien would face persecution or torture:

> Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A). Similarly, under FARRA, which codified CAT protections, an alien may not be removed to any country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18. In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings.

*D.V.D.*, 778 F. Supp. 3d at 365–67 (citation modified).

**Legal Standard**

A court may issue a preliminary injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a). A preliminary injunction is a type of emergency relief, the purpose of which is to preserve the status quo. *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors, harm to the opposing party and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For preliminary injunctions, no one factor is necessarily given more weight than another, "[r]ather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). However, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Texas v. United States*, 328 F. Supp. 3d 662, 709 (S.D. Tex. 2018) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (citing *Winter*, 555 U.S. at 20, 24).

## Discussion

### A. Jurisdiction

Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

Respondents argue that the Court lacks jurisdiction to issue a Preliminary Injunction under 8 U.S.C. § 1252. Specifically, Respondents contend that § 1252(g) eliminates district court

jurisdiction over the relief requested because it is related to the execution of a final removal order. (Dkt. 7 at 13–15.) Additionally, Respondents argue that § 1252(b)(9) and (a)(5) divest the Court of jurisdiction to hear Petitioner's claims, leaving that power with the court of appeals in a petition for review. (*Id.* at 15–16.) Sagastizado responds to these arguments, arguing that the Court does have jurisdiction. First, he argues that his claims do not challenge the decision to execute his removal order, so § 1252(g) does not limit jurisdiction. (Dkt. 24 at 13.) Second, § 1252(b)(9) and (a)(5) similarly do not limit jurisdiction because Sagastizado does not challenge his final removal order. (*Id.* at 13–14.) The Court agrees with Sagastizado.

For the reasons discussed below, the Court finds that it does have jurisdiction to grant the relief requested in Petitioner's Motion for Preliminary Injunction.

### 1. 8 U.S.C. § 1252(g)

First, the Court is not persuaded that § 1252(g) restricts review of Sagastizado's request for a preliminary injunction. The Fifth Circuit "has long recognized that [§ 1252(g)] is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). The distinction between claims that are linked to a removal order and those that are not depends on the relief that a petitioner seeks. *See Duarte*, 27 F.4th at 1055.

Sagastizado does not ask the Court to review the Executive Branch's decision to remove him. Instead, he challenges the post-removal process he has been afforded. Sagastizado received a final order of removal on February 22, 2024. (Dkt. 1, Attach. 1.) The Government made decisions to commence those proceedings against him, to adjudicate the case, and most recently, to execute his removal order after terminating his order of supervision. (*See id.*; Dkt. 7, Attachs. 5, 6.)

11 / 31

Sagastizado challenges none of those decisions, which the Court would be precluded from reviewing under § 1252(g). Instead, Sagastizado seeks narrow relief and challenges the process he has been afforded after the Government made those decisions to remove him.

This is not a challenge to the Government's discretionary choice of "whether and when" to remove him. *See Duarte*, 27 F.4th at 1055. Essentially, Sagastizado "do[es] not seek review of a decision that could invalidate [his] removal order[]." *See id.* So § 1252(g) cannot bar the Court's review.

### 2.  8 U.S.C. § 1252(a)(5) and (b)(9)

Other § 1252 subsections also fail to strip the Court of jurisdiction. Sections 1252(a)(5) and (b)(9) cabin review of final orders of removal in the courts of appeal. 8 U.S.C. § 1252(a)(5), (b)(9). Sagastizado argues that because he challenges a process occurring *after* his removal proceedings ended, neither section applies. *See Riley v. Bondi*, 145 S.Ct. 2190, 2199 (2025) (distinguishing between the finality of a removal order and subsequent withholding proceedings). Indeed, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal" "challenging the decision to detain them in the first place or seek removal" or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte*, 27 F.4th at 1056–57; *see also Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015)). The Court applies the same reasoning here in finding that § 1252 does not bar jurisdiction.

### B.  Individualized Claims After Class Certification in *D.V.D.*

Because there is ongoing, class-action litigation in *D.V.D.*, the Court considers whether Sagastizado's membership in the class should bar review of his claims or a grant of injunctive

relief.[2] When the district court in *D.V.D.* certified the class, it granted a class-wide preliminary injunction. 778 F. Supp. 3d at 392–93. The Supreme Court stayed the preliminary injunction, which is now on appeal to the First Circuit. *See D.V.D.*, 145 S. Ct. 2153. But the class remains certified. The class was created under Rule 23(b)(2) of the Federal Rules of Civil Procedure. *D.V.D.*, 778 F. Supp. 3d at 386; Fed. R. Civ. P. 23(b)(2) (injunctive or declaratory relief appropriate for class as a whole). Certification under Rule 23(b)(2) does not require giving class members notice and an opportunity to opt out. *See* Fed. R. Civ. P. 23(c).

Respondents contend that the Court should dismiss Sagastizado's petition and deny his request for relief, "because the relief requested here is basically the same as the relief requested in *D.V.D.*" (Dkt. 25 at 2.) They argue that the Court should avoid providing relief because that relief could conflict with future relief for the *D.V.D.* class.[3] (*Id.* at 2–3.) Sagastizado asserts several arguments in response to support the position that class membership does not preclude the Court's review. Specifically, Sagastizado argues that there is no final judgment in the *D.V.D.* litigation, and therefore there is no preclusive effect that binds Sagastizado. (Dkt. 24 at 10–11.) Moreover,

---

[2] The parties agree that Sagastizado is a *D.V.D.* class member. (Dkt. 25 at 2; Dkt. 24 at 10.)

[3] Courts across the country have taken distinct approaches in ruling on individualized preliminary injunctions for *D.V.D.* class members. A number of courts have found that the *D.V.D.* litigation bars them from hearing individual claims. *See, e.g.*, *Sanchez v. Bondi*, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025). Other courts have heard the claims and granted individual injunctive relief. *See, e.g.*, *Y.T.D. v. Andrews*, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025); *Vaskanyan v. Janecka*, 2025 WL 2014208, at *1 (C.D. Cal. June 25, 2025). Other courts distinguish in part the relief sought. *See, e.g.*, *Nguyen v. Scott*, 2025 WL 2419288, at *21–23 (W.D. Wash. Aug. 21, 2025); *Manago v. Carter*, 2025 WL 2576755, at *1 (D. Kan. Sept. 5, 2025) (citing *Nguyen* for the proposition that individual class members could seek relief under withholding of removal); *Medina v. Noem*, 2025 WL 2306274, at *1 (D. Md. Aug. 11, 2025) (granting injunction because the relief sought challenged continued detention). The district court in *D.V.D.* has even acknowledged this split of cases in an order issued after the class-wide injunction was stayed. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 2025 WL 2673195, at *2 (D. Mass. Aug. 28, 2025) ("In the meantime, class members may be prevented from seeking viable relief, in and out of this litigation, because of the inoperative injunction.").

he argues the "first-to-file" rule is a function of judicial discretion, and this Court should not abstain from hearing the case in light of compelling circumstances. (*Id.*)

As a general rule, decisions in a class action are binding on all class members in subsequent decisions. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). "Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply." *Id*. The preclusive effect of a class action could prevent class members from seeking relief in an individual lawsuit. *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005). Here, as Sagastizado notes, res judicata requires a final judgment on the merits in order to preclude a later suit. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Since there are no final judgments on the merits in the *D.V.D.* litigation, res judicata does not preclude review.

Even so, the Court evaluates whether there are other prudential doctrines that favor abstention. The Fifth Circuit has acknowledged, in the context of litigation on prison conditions, that determining whether to allow for independent claims to move forward in the context of a wider class action is a circumstance-specific inquiry. For example, in *Gates v. Cook*, the Fifth Circuit allowed a sub-class of a certified class to proceed independently of the class counsel and class representative on their claims. 376 F.3d 323, 328–29 (5th Cir. 2004). The panel acknowledged a prior decision barring individual claims in the context of prison conditions litigation that had been aimed at "avoiding the inefficiency of a situation in which multiple courts would be forced to familiarize themselves with the problems of the Texas prison system" and avoiding "increased confusion and decreased effectiveness that would likely arise if multiple district courts were simultaneously exercising equitable powers over the state prison system." *Id.* at. 329. Yet ultimately, the panel allowed the claims raised in *Gates* to go forward after determining that these concerns were inapplicable. *Id.*

The Court applies the same logic here. Unlike the ongoing fact-specific inquiry required for supervising an injunction on prison conditions, there is a low burden on the Court to familiarize itself with ongoing factual circumstances to supervise the narrow injunctive relief Sagastizado requests. Additionally, Sagastizado seeks review of his RFI by an IJ, a request that can be effectively provided to him as an individual without requiring that any actions be taken that could alter other class members' entitlements and result in confusion while the litigation in *D.V.D.* remains pending. For those reasons, the Court finds that the circumstances of this case favor allowing Sagastizado to bring his individual claims while the class-wide relief remains pending.

Finally, the Court also considers the "first-to-file" rule. Courts use the "first-to-file" rule to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). The Fifth Circuit considers this to be a permissive rule and a prudential doctrine. *See, e.g.*, *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 541 n.3 (5th Cir. 2022) (per curiam). District courts in the Fifth Circuit have exercised this discretion to still hear cases in light of "compelling circumstances." *See, e.g.*, *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 633 (W.D. Tex. 2018); *see also In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6–7, *9 (E.D. Tex. Oct. 21, 2020).

The Court finds that there are compelling circumstances to consider Sagastizado's claim. As Sagastizado argues, his removal to Mexico is imminent without an injunction, yet the ongoing *D.V.D.* litigation will take time to proceed through the appellate process. (Dkt. 24 at 12–13.) Respondents argue that the Court should instead "avoid providing Sagastizado with relief that may eventually conflict with the relief, if any, ultimately provided to the *D.V.D.* class." (Dkt. 25 at 2.) But later relief in *D.V.D.* will not prevent Sagastizado from being removed to Mexico without due

process in the meantime. And relief for Sagastizado here is distinguishable in part from *D.V.D.* because plaintiffs there did not seek class-wide injunctive relief with respect to future claims for withholding of removal.[4] To dismiss Petitioner's claims for preliminary injunctive relief at this time would effectively preclude Sagastizado from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved. The Court finds it counterintuitive that non-opt-out class membership, for the purposes of granting a preliminary injunction to prevent removal without due process, could prevent individuals from making their own claims for due process while that injunction is stayed on a class-wide basis. For these reasons, the Court declines to dismiss his claims on the ground that he is a member of the class in the *D.V.D.* litigation.

## C. Preliminary Injunction

To merit a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, and that the balance of equities and public interest weigh in his favor. *See Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 434. The Court analyzes each element below.

### 1. Likelihood of Success on the Merits

Petitioner has shown the requisite likelihood of success. He has demonstrated a likelihood of success as to his claim that he cannot be removed to a third country without sufficient notice and a meaningful opportunity to raise a claim, and that Respondents' failure to provide him with

---

[4] Sagastizado seeks IJ review of a negative RFI determination with respect to a claim for withholding of removal to Mexico. Thus, the relief this Court could grant is not identical to the relief at question in the *D.V.D.* litigation, which considered due process procedures for CAT claims. *See Nguyen*, 2025 WL 2419288, at *20; *see also D.V.D.*, 778 F. Supp. 3d at 393 n.51.

review of his negative RFI determination deprives him of his rights under the Due Process Clause of the Fifth Amendment. (*See* Dkt. 20 at 3.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). That noncitizens are entitled "to due process of law in the context of removal proceedings" is "well established." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (citation modified).

Sagastizado seeks to raise a claim for withholding of removal to Mexico, a country to which Respondents now imminently intend to remove him unless this Court intervenes. (*See* Dkt. 15.) Under the INA, Respondents may seek to remove a noncitizen granted withholding of removal from one country to another country that will accept the noncitizen by following a statutorily prescribed process for selecting an alternative country of removal. *See* 8 U.S.C. § 1231(b)(2)(E)(i)–(vii); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005); *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 530–32 (2d Cir. 2006); *Himri v. Ashcroft*, 378 F.3d 932, 938–40 (9th Cir. 2004); *Palavra v. I.N.S.*, 287 F.3d 690, 692 (8th Cir. 2002). But a noncitizen cannot be removed to a country where his life or freedom would be threatened on account of a protected characteristic unless one of several narrow exceptions apply. *See* 8 U.S.C. § 1231(b)(3). Withholding of removal is thus a mandatory protection for noncitizens who demonstrate that they meet its criteria rather than a discretionary grant. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419–

20 (1999). Eligibility is determined on an individual basis to "strike a . . . balance between securing the removal of inadmissible aliens and ensuring their humane treatment." *Jama*, 543 U.S. at 348.

As a result, courts considering due process in the withholding context have held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds*, 594 U.S. 523 (2021); *Protsenko v. U.S. Att'y Gen.*, 149 F. App'x 947, 953 (11th Cir. 2005) (per curiam); *Nguyen v. Scott*, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025); *D.V.D.*, 778 F. Supp. 3d at 387; *Y.T.D. v. Andrews*, 2025 WL 2675760, at *11 (E.D. Cal. Sept. 18, 2025). In determining whether Sagastizado has been provided this opportunity, the Court considers Petitioner's and Respondents' arguments as to the role of the federal regulations in determining the procedures due, the constraints imposed by due process on third country removals, and the significance of the Supreme Court's stay of the preliminary injunction in *D.V.D.* in turn.

### a.  Federal Regulations

Sagastizado argues that he is entitled to independent *de novo* review by an IJ of his negative RFI determination prior to removal to Mexico. (Dkt. 16 at 1; Dkt. 24 at 5–7.) He points to 8 C.F.R. § 1208.31(g), which requires independent IJ review of negative RFI determinations in support of this contention. (*See* Dkt. 24 at 5–7.) Respondents counter that the procedures set out in the federal regulations under 8 C.F.R. § 1208.31(g) for *de novo* review of a negative RFI by an IJ are wholly inapplicable to Sagastizado because Sagastizado was originally granted withholding of removal in the context of removal proceedings brought under 8 U.S.C. § 1229a. (Dkt. 21 at 4–8.) Respondents

argue that the regulation covers only noncitizens removed under 8 U.S.C. § 1228(b) and whose removal is reinstated under 8 U.S.C. § 1231(a)(5). (*Id.*)

While Respondents are correct that the regulation does not on its face apply to noncitizens such as Sagastizado, who were granted withholding of removal while in removal proceedings brought under 8 U.S.C. § 1229a, the requirements of 8 C.F.R. § 1208.31(g) are still pertinent to the inquiry into Sagastizado's procedural entitlement to due process. Both Respondents and Petitioner acknowledge that neither the INA nor current federal regulations provide for any process for removal of a noncitizen to a third country after a grant of withholding of removal. (Dkt. 25 at 3–4; Dkt. 24 at 6.) And this is unsurprising, given that third country removals were relatively rare prior to the implementation of new policy objectives by the Executive Branch.[5] *See Johnson*, 594 U.S. at 537 (third country removals in 1.6% of cases during 2017); February DHS Policy Directive (directing ICE to begin detaining and removing noncitizens granted withholding of removal to third countries on February 18, 2025 in compliance with Executive Order 14165, *Securing Our Borders*).

---

[5] Without attaching weight to dicta, it is worth noting that prior courts contemplating the possibility of future removal to a third country appeared to presume that the noncitizen granted withholding of removal would be entitled under due process to an additional opportunity to seek withholding of removal before an IJ as to the new proposed country. *See, e.g.*, *Su Hwa She v. Holder*, 629 F.3d 958, 965 (9th Cir. 2010), *superseded by statute on other grounds as stated in Ming Dai v. Sessions*, 884 F.3d 858, 868 n.8 (9th Cir. 2018) ("Under the plain wording of 8 C.F.R. § 1208.16, an applicant is not entitled to adjudication of an application for withholding of removal to a country that nobody is trying to send them to. Here, the proposed country of removal is Taiwan, not Burma, despite the IJ's designation of both nations. To be sure, an eligible petitioner may apply for asylum and withholding of removal to countries designated by an IJ pursuant to 8 C.F.R. § 1240.10(f). *See* 8 C.F.R. § 1240.11(c) (2010). It follows that a failure to provide notice and, upon request, stay removal or reopen the case for adjudication of She's applications as to Burma would constitute a due process violation *if* Burma becomes the proposed country of removal (as opposed to an alternative country of removal), but not otherwise."); *see also Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) (relying on *Su Hwa She*).

Petitioner argues that in the absence of an established procedure under the INA or the federal regulations, 8 C.F.R. § 1208.31(g) is "most directly analogous to the situation at bar." (Dkt. 24 at 6.) Petitioner emphasizes that IJ review is also provided by regulation under the similar process for conducting Credible Fear Interviews (CFI) for noncitizens placed in expedited removal proceedings who have recently entered the United States. (*Id.* at 7); *see* 8 C.F.R. § 1003.42. Additionally, Petitioner notes that there are no regulations that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without providing for independent review of that screening by an IJ. (Dkt. 24 at 7.)

Respondents on the other hand argue that in the absence of a federal statute or regulation that provides an established procedure, the substance and extent of any procedures provided for third country removals are for the Executive Branch to determine. (Dkt. 25 at 3.) Respondents identify that the Executive Branch has issued the March Guidance as the procedure it intends to provide Sagastizado and other similarly situated individuals to make this determination. (*Id.* at 4; Dkt. 21 at 10.)

Indeed, there is a "customary policy of deference to the President in matters of foreign affairs" and this extends to the policy of third country deportations because "[r]emoval decisions, including the selection of a removed alien's destination, 'may implicate our relations with foreign powers' and require consideration of 'changing political and economic circumstances.'" *Jama*, 543 U.S. at 348 (citing *Mathews v. Diaz,* 426 U.S. 67, 81 (1976)). While the Executive Branch has the authority to determine procedures to implement its policy of third country removal in the absence of a congressional mandate, those procedures must nevertheless comply with the minimum constitutional requirements of due process. *See Galvan v. Press*, 347 U.S. 522, 531 (1954).

20 / 31

Respondents argue that the procedures provided to Sagastizado are constitutionally sufficient because he was provided with notice of his imminent removal to Mexico and given the opportunity to raise his fear claim before USCIS. (Dkt. 21 at 10.) Respondents point to the notion that the Court may not second guess the assessment of the Executive that a noncitizen will not be tortured abroad unless judicial review is explicitly provided for. *See Munaf v. Geren*, 553 U.S. 674, 702 (2008); *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009). But this Court is not asked to review the Executive's assessment of Sagastizado's risk of torture in Mexico. Instead, the Court must determine whether Sagastizado is likely to succeed on his claim that due process requires, at a minimum, review by an IJ of his negative RFI determination as to Mexico prior to his removal. (*See* Dkt. 24 at 9.) The Court agrees with Respondents that the existing regulations do not dispose of this question. However, the Court is persuaded by Petitioner's argument that it should look to the existing regulations to provide substantive guidance as to the constitutional entitlement of noncitizens to due process in conducting its own inquiry into Sagastizado's due process claim.

### b. Procedural Due Process Analysis

This Court finds that Petitioner is likely to succeed on his claims as a matter of procedural due process under the Fifth Amendment. Had Respondents designated Mexico as the country of removal during Petitioner's initial removal proceedings under 8 U.S.C. § 1229a, he would have been provided the opportunity to apply for withholding of removal from Mexico directly before an IJ rather than complete a threshold fear-based screening. *See* 8 C.F.R. § 1240.1(a)(1)(iii); *see also Kuhai v. I.N.S.*, 199 F.3d 909, 913–14 (7th Cir. 1999) (citing *Kossov*, 132 F.3d at 408–09); *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). Moreover, the regulations provide for

IJ review of USCIS fear interviews in situations where the noncitizens are arguably entitled to lesser procedural protections than Sagastizado under the Constitution.

In *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court underscored the distinction that "aliens who have established connections in this country" have greater due process rights than "an alien at the threshold of initial entry." 591 U.S. at 107. The record reflects that Sagastizado has lived continuously in the United States since at least 2018 and mostly likely even longer given that he reports that he first entered the United States at 14 years old and is now 27 years old. (*See* Dkt. at 24, Attach. 1.) Sagastizado attended both his initial immigration court proceedings that commenced in 2018 and then his subsequent ICE supervision appointments for a year prior to his apprehension and Respondents' decision to remove him to a third country. (*See* Dkt. 1 at 7; Dkt. 7, Attachs. 3, 4.) Thus, Petitioner is far beyond the "threshold of initial entry" to this country. But Respondents seek to provide him with lesser procedure than he would receive if he were in fact at that threshold. Under the existing regulations, a noncitizen who illegally reenters the country and has his removal reinstated is provided with IJ review of a negative RFI determination. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 1208.31(g). He is also provided with IJ review if he enters the country for the first time, is apprehended shortly after arrival, placed in expedited removal, and then expresses fear during a CFI. 8 C.F.R. § 1003.42. Therefore, Petitioner's argument that he cannot be entitled to lesser protections now than he would have been upon his initial entry or upon a future commission of felony illegal reentry into the United States carries significant weight.

"Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961) (citation omitted). It "calls for such procedural protections as the

particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, determining the specific dictates of due process generally requires evaluation of "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews,* 424 U.S. at 335).

On the first *Mathews* prong, Respondents argue that Sagastizado has a private interest in being free from detention and that executing his removal to Mexico without additional delay will further that goal. (Dkt. 25 at 4.) But this misses the mark. Sagastizado's private interest at stake is his right to have his removal withheld from a country where he is more likely than not to be persecuted. Given the significance of this interest and the mandatory nature of withholding of removal for noncitizens who qualify, Sagastizado's private interest weighs heavily in favor of a robust due process requirement.

On the second *Mathews* prong, Respondents additionally argue that there is a low risk of erroneous deprivation of Sagastizado's rights under the March Guidance because he was already provided with an opportunity to raise his fear claim with a USCIS officer, and the officer denied his claim. (Dkt. 21 at 10; Dkt. 25 at 4–5.) Conversely, Petitioner argues that the need for *de novo* IJ review to avoid an erroneous deprivation is great, particularly in light of the interests at stake in preventing removal to a country where Sagastizado may be persecuted. (Dkt. 20 at 5–6.) Moreover, Petitioner argues that without IJ review, the process for the fear determination by USCIS is a "black box." (*See* Dkt. 24 at 8) (explaining that the RFI denial by USCIS resulted in a "check-the-box form which only shows Petitioner the results of his interview[] but gives no reasoning for why

his fear claim was denied"). And Sagastizado's RFI denial was made without any opportunity for him to receive an explanation as to the reasoning for the denial. (*See* Dkt. 16, Attach. 1 at 1–2) (explaining that Petitioner and counsel only learned that his RFI had been denied after he was notified that he would be imminently removed to Mexico within a few days). Therefore, the value of the additional procedural safeguard of IJ review is substantial. (Dkt. 24 at 8.) The Court agrees with Petitioner that the cost-benefit analysis weighs in his favor. Requiring IJ review in Petitioner's case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an IJ. (*See id.*) (citing 8 C.F.R. § 208.31(c)). Moreover, this procedure is already provided for in various other removal contexts where noncitizens are entitled to lesser due process rights as discussed in Part C.1.a of this Order.

On the last prong, Respondents argue that the Government's countervailing interest in the prompt execution of removal weighs in favor of providing Sagastizado with the opportunity to raise his claims through an RFI only, without opportunity for IJ review. (Dkt. 24 at 4–5.) There is no doubt that the Government has a significant interest in the prompt execution of removals. *Nken*, 556 U.S. at 436; *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). But even so, *Nken* simultaneously recognized that "[o]f course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." 556 U.S. at 436. And the procedures requested by Petitioner create minimal delay in that process. The existing regulations provide that an IJ review should be conducted within ten days of denial of an RFI, and only if the noncitizen passes that review may he proceed to a full evidentiary hearing on his claim before an IJ. 8 C.F.R. § 1208.31(g) ("In the absence of exceptional circumstances, such review shall be conducted by the immigration judge

within 10 days of the filing of the Form I-863, Notice of Referral to Immigration Judge, and the complete record of determination with the immigration court."). Thus, considering the weight of each prong under *Mathews,* the due process analysis comes out in favor of Petitioner.

### c.    The Stay of the Class-Wide Preliminary Injunction in *D.V.D.*

Respondents and Sagastizado disagree on the weight of the Supreme Court's stay of the preliminary injunction in *D.V.D.* and its impact on the likelihood of success for Petitioner on his individual claims. Respondents argue that the Court should avoid granting relief that the Supreme Court will ultimately reject, as the stay is indicative of the Supreme Court's opinion on the merits of the claims presented in *D.V.D.* (Dkt. 25 at 3.) Sagastizado argues that the Court should not read meaning into the Supreme Court's stay of the class-wide preliminary injunction. (Dkt. 24 at 10.)

In its short memorandum opinion, the Supreme Court stayed the nationwide preliminary injunction with no discussion of the merits. *D.V.D.*, 145 S. Ct. 2153. In another case where the Supreme Court stayed a district court's preliminary injunction without an analysis of the merits, Justice Kavanaugh emphasized that "[t]he stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring). Because the stay is not indicative of the Supreme Court's assessment of the merits, the Court rejects Respondents' argument that the Supreme Court "signaled that ultimately the class members would not succeed on the merits of the case." (Dkt. 25 at 3.) Notably, the class-wide nature of the *D.V.D.* injunction alone could have justified the stay, and that justification would not undermine the merits of an individual claim for relief. *See Nguyen*, 2025 WL 2419288, at *23. Therefore, reading into the Supreme Court's stay

is an inherently speculative endeavor. Without clearer direction, the Court will not deny relief this Court deems likely meritorious simply because the class-wide injunction was stayed.[6]

Thus, for the foregoing reasons, the Court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

### 2. Irreparable Harm

As to the second *Winter* factor, the Court finds that Petitioner has established the requisite showing of a risk of irreparable harm. The irreparable harm at issue is harm to Petitioner's Fifth Amendment Due Process rights as well as the harm that would occur as a result of his removal to a country in which he may face persecution and subsequent refoulement to El Salvador.

 Petitioner argues that although "the burden of removal alone cannot constitute the requisite irreparable injury," his case presents far more immediate injury than the garden-variety removal case in which "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." (Dkt. 20 at 6) (quoting *Nken*, 556 U.S. at 435). Petitioner has expressed a fear of torture and persecution if removed to Mexico, and once in Mexico, a further fear of being removed to El Salvador where an IJ has already found that it is more likely than not that he will be persecuted. He argues that if removed to Mexico, he will not have a legal status. Importantly, Petitioner also specifies that "[a] finding of irreparable injury

---

[6] The Supreme Court granted a motion for clarification with respect a remedial order from the District Court of Massachusetts. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627 (July 3, 2025). Respondents argue that this order "confirmed that its stay applied to individual class members." (Dkt. 25 at 3.) While the Court agrees that the stay of the class-wide preliminary injunction applies to all class members, the July 3, 2025 order only addresses the enforceability of a remedial order essentially enforcing the injunction as a remedy for civil contempt. *D.V.D.*, 145 S. Ct. at 2629–30. The order provides no additional guidance about individual relief outside the *D.V.D.* litigation. *See id.*

is mandated if a constitutional right is threatened or impaired." (Dkt. 20 at 6) (quoting *Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 484 (N.D. Tex. 2023) and citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Respondents focused their arguments on the assertion that Petitioner is not likely to succeed on the merits but have also argued that the harm Petitioner faces if he is removed to Mexico is speculative and therefore does not constitute a sufficient risk of harm. (*See* Dkts. 21, 25.)

The Court agrees with Petitioner and finds that he has demonstrated a substantial risk of irreparable harm. A petitioner seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 22. The Supreme Court has found the potential for irremediable error means that the noncitizen's "interests at stake are accordingly particularly weighty." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025). Moreover, "the loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod*, 427 U.S. at 373); *accord M. D. v. Abbott*, 2024 WL 2309123, at *5 (5th Cir. May 20, 2024) (unpublished) (finding that alleged harm to due process protections constituted irreparable harm).

Here, Respondents informed the Court that they will remove Petitioner to Mexico without providing IJ review of his negative RFI. (*See* Dkt. 15.) Thus, Petitioner has demonstrated with near certainty that the asserted harm to his due process rights will occur absent a preliminary injunction. Such injury would constitute an irremediable error and weighs heavily in favor of a finding of irreparable harm.

In addition to the harm to his Fifth Amendment rights, Petitioner argues that he does not simply face the burden of removal, but rather the particularized irreparable injury of being removed to a country in which he fears persecution and potential refoulement to El Salvador, where an IJ has found that it is more likely than not Petitioner will be persecuted. (*See* Dkt. 24 at 12.)

Courts have agreed that removal to a country in which an individual faces persecution constitutes irreparable harm. *See Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury"), *appeal dismissed without op.*, 692 F.2d 755 (5th Cir. 1982); *see also Mahdejian v. Bradford*, 2025 WL 2269796, at *4–5 (E.D. Tex. July 3, 2025) ("Here, the threatened harm is clear and simple: persecution, torture, and death."); *accord Singh v. Garland*, 4 F.4th 322, 329 (5th Cir. 2021) (finding that danger of physical injury or that one's life is in jeopardy upon removal constituted irreparable harm), *withdrawn*, 855 F. App'x 958 (5th Cir. 2021) (withdrawing opinion "[t]o avoid any uncertainty in its efficacy" while the stay remained in effect because grant of stay does not create settled law and is not binding); *see also Beyhaqi v. Noem*, 2025 WL 1196003, at *2 (S.D. Tex. Apr. 22, 2025) (finding irreparable harm when the revocation of F-1 status created a potential for detention and deportation); *Misirbekov v. Venegas*, 2025 WL 2201470, at *2 (S.D. Tex. Aug. 1, 2025) (finding irreparable harm where petitioner had not been given due process and faced potential refoulement because of removal to a third country after being granted withholding of removal); *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (finding that petitioners demonstrated likelihood of irreparable harm, in part because of potential persecution if they were deported).

The Court agrees that the removal of Petitioner to a country in which he may face persecution and refoulement to El Salvador constitutes a sufficient risk of irreparable harm.

Sagastizado fears persecution in Mexico. Moreover, he has no legal status in Mexico. Once he is removed to Mexico, this Court may lack jurisdiction to order nonrefoulment to El Salvador. *See D.A. v. Noem*, 2025 WL 2646888, at *7 (D.D.C. Sept. 15, 2025); *see also Arguelles v. U.S. Att'y Gen.*, 661 F. App'x 694, 716 (11th Cir. 2016) (Martin, J., concurring) ("removal <u>does</u> constitute irreparable harm when facilitation of a removed petitioner's return will <u>not</u> be possible"). And it has already been determined that Sagastizado is likely to be persecuted in El Salvador.

Because Respondents have advised that they will imminently remove Petitioner to Mexico without IJ review of his negative RFI, and Petitioner has asserted he fears persecution and/or torture as a result of his removal to Mexico as well as refoulement to El Salvador, the Court finds that Petitioner has demonstrated a likelihood of irreparable harm.

### 3. Balance of Equities and the Public Interest

The Court now assesses the balance of the equities and the public interest, finding that they weigh in favor of granting the preliminary injunction. "These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435; *Mock*, 75 F.4th at 577 ("[t]he government's and the public's interests merge when the government is a party.")

Petitioner argues that the balance of equities and public interest tilt sharply in favor of the issuance of a preliminary injunction because "the public has a significant stake in the Government's compliance with the law." (Dkt. 20 at 6) (citing *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Respondents do not directly address the third or fourth *Winter* factors, but in the context of their procedural due process analysis and at the hearing they argue that there is always a public interest in prompt execution of removals. (*See* Dkts. 21, 25.)

The Court finds that the balance of equities and the public interest weigh in favor of Petitioner. Although "there is a public interest in preventing aliens from being wrongfully

removed, particularly to countries where they are likely to face substantial harm," that interest must be balanced with "a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. Critically, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (per curiam)); *see also Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016) (noting that the protection of constitutional rights is ordinarily of the highest public interest). Here, the Court has found that Petitioner's removal is likely in violation of his procedural due process rights under the Fifth Amendment. The Court therefore finds that enjoining Respondents from removing Petitioner prior to IJ review of his negative RFI is in the public interest.

As addressed above under the Court's *Mathews* analysis, the relief Petitioner requests is narrow and minimal: review of his negative RFI determination by an IJ prior to removal to a country where he has affirmatively expressed a fear of persecution. Consequently, any potential harm to the expediency of his lawful removal is minimal. In contrast, Petitioner faces harm to his procedural due process rights; removal to a country where he has expressed a fear of persecution; and potential refoulement to a country where an IJ has already determined that it is more likely than not that he will face persecution. Based on the current circumstances, the Court finds granting the preliminary injunctive relief requested is in the public interest.

## Conclusion

The Court has considered the merits of Petitioner's Motion for a Preliminary Injunction. (Dkt. 20.) For the foregoing reasons, Petitioner's Motion for a Preliminary Injunction (Dkt. 20) is GRANTED.

For the foregoing reasons, this Court hereby ORDERS that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby ENJOINED from removing Petitioner from the continental United States until seven (7) days after an Immigration Judge reviews Petitioner's denied Reasonable Fear Interview, and only if the Immigration Judge affirms such denial.

IT IS SO ORDERED.

SIGNED this October 2, 2025.

Diana Saldaña
United States District Judge