Case 5:25-cv-00104   Document 29   Filed on 11/14/25 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
November 14, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **ISRAEL ADONAY SAGASTIZADO SANCHEZ,** § § § | |
| Petitioner, § § | |
| VS. § | **CIVIL ACTION NO. 5:25-CV-00104** |
| § | |
| **KRISTI NOEM,** *et al.*, § § | |
| Respondents. § | |

## MEMORANDUM AND ORDER

Pending before the court is Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), and Motion for Specific Performance or Release from Custody, (Dkt. 28), as well as Respondents Motion to Dismiss, (Dkt. 7.) For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART** and Respondents Motion to Dismiss, (Dkt. 7), is **DENIED**. Petitioner's Motion for Specific Performance or Release from Custody, (Dkt. 28), is **DENIED** as moot. Respondents are hereby **ORDERED** to immediately release Petitioner from custody subject to reasonable conditions of supervision. Respondents are hereby **ORDERED** to notify Petitioner's counsel of the exact time and location of his release **no less than three hours** prior to releasing him. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time on Monday November 17, 2025.**

### Background

The background facts of Petitioner's case are set forth in detail in the Court's October 2, 2025 Memorandum Opinion and Order. (Dkt. 26.) The Court restates the facts as relevant below.

**A.     Factual background**

Petitioner Israel Adonay Sagastizado Sanchez ("Petitioner" or "Mr. Sagastizado") is a native and citizen of El Salvador. (Dkt. 24 at 1.) In 2012, at around 14 years old, he left El Salvador and came to the United States. (*Id.*, Attach. 2.)[1] In 2018, he was served with a Notice to Appear in front of an Immigration Judge (IJ) as a noncitizen present in the United States who had not been admitted or paroled. (*Id.*, Attach. 1 at 1.) In July 2021, he filed an I-589 application for asylum and withholding of removal. (*Id.*, Attach. 2.) After several years, on February 22, 2024, an IJ denied Petitioner's application for asylum but granted him withholding of removal under 8 U.S.C. § 1231(b)(3), prohibiting his removal to El Salvador. (Dkt. 1, Attach. 1.) The IJ granted withholding after finding it was more likely than not that Petitioner would be persecuted if he returned to El Salvador. (*Id.*); *see* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. As a part of his grant of withholding of removal, the IJ also simultaneously entered an order of removal to El Salvador. (*Id.*)

After receiving withholding of removal, Mr. Sagastizado was released from Immigration and Customs Enforcement (ICE) custody on May 6, 2024, on an order of supervision. (Dkt. 7, Attach. 4.) One year later, on May 6, 2025, Petitioner appeared for his regularly scheduled check-in with ICE. (*See id.*) At the check-in, he was detained by ICE and served with a Notice of Revocation of Release, a Warrant of Removal, a Notice of Custody Determination, and a Notice to Alien of File Custody Review. (Dkt. 24 at 2; Dkt. 7, Attachs. 5, 6, 7, 8.) The Notice of Revocation of Release informed Petitioner that the "Government of Mexico has agreed to accept your repatriation to facilitate your removal from the United States." (Dkt. 7, Attach. 5.) That same day, a family member was informed that Petitioner was in ICE custody and was given his personal

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

belongings. (Dkt. 1 at 7.) Since then, Petitioner has remained in ICE custody. He is currently detained at the Webb County Detention Center in Laredo, Texas. (*Id*. at 2.)

On July 17, 2025, Petitioner filed an emergency motion for stay of removal and a motion to reopen his proceedings in immigration court to seek withholding and Convention Against Torture (CAT) protections from Mexico. (Dkt. 24, Attachs. 3, 4.) On July 18, 2025, an IJ granted a temporary stay of removal. (*Id.*, Attach. 5.) Then on August 1, 2025, the IJ denied the motion to reopen and dissolved the temporary stay. (*Id.*, Attach. 6.) On August 19, 2025, Petitioner filed a motion to reconsider that was denied by the IJ the next day. (*Id.*, Attachs. 7, 8.) Petitioner then appealed the IJ's decision denying his motion to reopen to the Board of Immigration Appeals (BIA). (*Id.*, Attach. 9.) Petitioner moved the BIA for an emergency stay of removal, but the BIA has yet to rule on the stay of removal. (*Id.* at 4.) Additionally, on August 15, 2025, Petitioner expressed fear of removal to Mexico and requested a Reasonable Fear Interview (RFI). (Dkt. 16, Attachs. 1, 2, 3.) U.S. Citizenship and Immigration Services (USCIS) carried out Petitioner's RFI on August 29, 2025. (*Id.*, Attach. 1.) Petitioner then requested an IJ review of his denied RFI. (*Id.*, Attach. 5.) To date, Petitioner has not received IJ review of his denied RFI. (*See* Dkt. 28, Attach. 1.)

### B.     Procedural Background

On July 17, 2025, Petitioner filed a habeas petition with this Court seeking, among other relief, his release from ICE custody at the Webb County Detention Center in Laredo, Texas, where he has been detained pending his removal from the United States. (Dkt. 1.) He claims that Respondents have violated federal regulations and procedures and the Due Process Clause of the Fifth Amendment, that Respondents have no legal basis to detain him, and that he has been subject to unreasonable detention in violation of 8 U.S.C. § 1231(a)(6). (*Id*. at 8–10.) On August 20, 2025,

the Court issued an order granting Petitioner's Unopposed Motion to Suspend Briefing Deadline Pending Adjudication of Petitioner's Motion for Leave to Serve Document Request. (Dkt. 11.) The Order also required Respondents to notify Petitioner's counsel and the Court of any anticipated or planned transfer of Petitioner outside of the Southern District of Texas at least five days before any such transfer. (*Id.*) On August, 8, 2025, Respondents filed a Motion to Dismiss Mr. Sagastizado's Petition for Writ of Habeas Corpus, arguing that the Court does not have jurisdiction to review claims challenging the Government's ability to effectuate a final order of removal, Mr. Sagastizado fails to establish a prima facie claim for habeas relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that Mr. Sagastizado has failed to establish that there is no significant likelihood of his removal in the reasonably foreseeable future. (Dkt. 7.)

On September 8, 2025, Respondents advised the Court that they intended to remove Petitioner to Mexico on September 12, 2025. (Dkt. 15) ("Sagastizado will be escorted to the port of entry and will be allowed to enter Mexico on foot.").

The next day, on September 9, 2025, Petitioner moved for a Temporary Restraining Order (TRO) requesting that Respondents be enjoined from removing him to Mexico before carrying out an IJ review of his negative RFI determination. (Dkt. 16.) On September 10, 2025, the Court granted a 14-day TRO to that effect. (Dkt. 18.) After considering the briefing submitted by the Parties, the Court held the Preliminary Injunction Hearing on September 29, 2025, and heard oral argument. (*See* Dkts. 23, 24, 25.) In the Court's Order issued on October 2, 2025, the Court granted Petitioner's Motion for Preliminary Injunction, enjoining Respondents from removing Petitioner to a third country without review of his RFI by an IJ. (Dkt. 26)

On October 9, 2025, Petitioner filed his Response in Opposition to Respondent's Motion to Dismiss, arguing that this Court has jurisdiction to hear Petitioner's claims and that Petitioner's

claims under *Zadvydas* should not be dismissed because Respondents appear to have no lawful plans to remove Petitioner in the reasonably foreseeable future, regardless of whether a six-month "presumptively reasonable period" of custody applies to Petitioner's claims. (Dkt. 27.) Subsequently, on October 24, 2025, Petitioner filed a Motion for Specific performance or Release from Custody, requesting the Court order Respondents to either schedule Petitioner's IJ hearing within 10 days or release him from custody pending further immigration proceedings. (Dkt. 28.) Petitioner further noted that as of October 22, 2025, Respondent's Counsel did not have specific information as to the status of IJ review of Petitioner's denied RFI. (*Id.*, Attach. 1.)

## Legal Standards

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 8 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 8 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id.* (citing 8 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–8 (citation omitted). "Whether a set

of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 8 U.S.C. § 2241(c)(3)).

## Discussion

Mr. Sagastizado filed a petition for writ of habeas corpus, bringing statutory and constitutional challenges to his post-removal order detention by ICE. The Court first analyzes whether it has jurisdiction to hear petitioner's claims. Finding that it does, the Court addresses the merits of Petitioner's claim that his detention is no longer authorized under 8 U.S.C. § 1231(a)(6) because his lawful removal is not reasonably foreseeable. The Court first addresses whether Mr. Sagastizado's current detention is presumed to be reasonable. The Court then turns to the question of whether there is significant likelihood that Mr. Sagastizado's lawful removal will occur in the reasonably foreseeable future. Finding that Mr. Sagastizado's lawful removal is not reasonably foreseeable, the Court holds that his detention is no longer authorized under 8 U.S.C. 1231(a)(6).[2]

### A. Jurisdiction

Before considering the merits of Petitioner's claims, the Court must determine whether it has subject matter jurisdiction. *See Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore*, 538 U.S. at 517; *Baez*, 150 F. App'x at 312; *Oyelude*, 125 F. App'x at 546. Although

---

[2] "Because the Court grants in part the Petition, while taking as true the facts as presented by Respondents, it is unnecessary to hold a hearing." *Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citing *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989)).

several sections of the Immigration and Nationality Act (INA) strip federal district courts of jurisdiction to hear challenges to immigration-related actions, none of these jurisdiction stripping provisions bar courts from hearing a habeas petitioner's challenge to his post-removal order detention, as opposed to his removability. *See Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019).

Here, Respondents argue that to the extent that Mr. Sagastizado is challenging Respondents' ability to effectuate his final order of removal, his claims are jurisdictionally barred. (Dkt. 7 at 13.) Specifically, Respondents argue that 8 U.S.C. § 1252(g) "eliminates subject matter jurisdiction over habeas challenges, including constitutional claims, to an arrest or detention for the purposes of executing a final order of removal." (*Id*. at 14.) Respondents further argue that 8 U.S.C. § 1252(b)(9) divests the court of jurisdiction to hear Petitioner's claims. (*Id*. at 15–16.) Petitioner responds that 8 U.S.C. §§ 1252(g) and (b)(9) do not strip the Court of its jurisdiction in this case because Mr. Sagastizado does not challenge Respondents decision to or ability to effectuate his final order of removal, rather he brings constitutional and statutory challenges that pertain to the lawfulness of his post-removal order detention. (Dkt. 27 at 6.) The Court considers the relevant jurisdiction stripping provisions in turn.

1. **8 U.S.C. § 1252(g)**

The Court first considers whether 8 U.S.C. § 1252(g) strips it of jurisdiction to hear Mr. Sagastizado's claims. Under 8 U.S.C. § 1252(g) "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," even when review is otherwise provided for through 28 U.S.C. § 2241.

The Supreme Court has explained that notwithstanding 8 U.S.C. § 1252(g), "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-

removal-period detention." *Zadvydas*, 533 U.S. at 688. The Fifth Circuit "has long recognized that [§ 1252(g)] is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g)." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted). Where Mr. Sagastizado does not challenge his removal order but instead challenges the lawfulness of his post-removal order detention, § 1252(g) does not strip the Court of jurisdiction to hear his claims.

1. **8 U.S.C. § 1252(b)(9)**

The Court must also examine whether 8 U.S.C. § 1252(b)(9) strips the Court of jurisdiction to hear Petitioner's claims. 8 U.S.C. § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court discussed the extent to which 8 U.S.C. § 1252(b)(9) strips courts of jurisdiction to hear claims challenging executive agencies' detention authority. The Supreme Court recognized that, assuming the actions taken by the Government constitute actions taken to remove noncitizens from the United States, "the applicability of § 1252(b)(9) turns on whether the legal questions that we must decide 'arise from' the actions taken to remove" noncitizens. *Jennings*, 583 U.S. at 292–93. It may be argued that the

act of detaining noncitizens "arises from" actions taken to remove them, because if the Government had not taken action to remove the noncitizen, the noncitizen would not be in custody at all. *Id*. at 293. However, the Supreme Court rejected this argument because "this expansive interpretation of § 1252(b)(9) would lead to staggering results." *Id*. Namely, "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id*. Thus, the Supreme Court has declined to interpret § 1252(b)(9) as stripping courts of jurisdiction to hear such claims. *Id*.

The Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal;" "challenging the decision to detain them in the first place or seek removal;" or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (citing *Jennings*, 583 U.S. at 294–95); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.")

Here, Petitioner brings statutory and constitutional claims challenging his post-removal order detention. The Court has not been stripped of its jurisdiction to hear such claims.

### B. The Extent of Immigration Officials' Detention Authority Under 8 U.S.C. § 1231(a)(6)

The principal issue before the Court is whether Petitioner's continuing post-removal order detention is authorized under 8 U.S.C. § 1231(a)(6). (*See* Dkt. 1 at 5–6, 8; Dkt. 7 at 6–8, 10–13; Dkt. 27 at 6–16.) Section 1231 generally governs post-removal order detention, or detention of a noncitizen subject to a "final order of removal." 8 U.S.C. § 1231. Pursuant to § 1231, once an

immigration judge issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, he may then become eligible for supervised release until removal can be accomplished. *See* 8 U.S.C § 1231(a)(3).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered the extent of immigration officials' authority to detain noncitizens post-removal order under 8 U.S.C. § 1231. The Supreme Court expressly stated that there is "nothing in the history of [§ 1231] that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The purpose of detention during and beyond the removal period is to "secure[] the alien's removal." *Id*. at 682. Because the purpose of ongoing detention under 8 U.S.C. § 1231(a)(6) is to facilitate removal, in order to determine whether continued post-removal order detention is lawful, habeas courts must ask whether a petitioner's removal is reasonably foreseeable. *Id*. at 699–700. "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" *Id*. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). In answering whether a noncitizen's removal is reasonably foreseeable, the Supreme Court reemphasized:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable,

> the court should hold continued detention unreasonable and no longer authorized by statute.

*Id*. at 699–700.

Here, neither party disputes that Mr. Sagastizado's detention is governed by 8 U.S.C. § 1231(a)(6). (Dkt. 7 at 10.; Dkt. 1 at 8.) Petitioner's first, second and third claims for release argue that under the Supreme Court's reasoning in *Zadvydas*, neither due process nor 8 U.S.C. § 1231(a)(6) permit his continued detention unless there exists a significant likelihood of removal in the reasonably foreseeable future. (Dkt. 1 at 8–9; Dkt. 27 at 8.) He further argues that there is not a significant likelihood of lawful removal to Mexico in the reasonably foreseeable future. (Dkt. 27 at 14–15; Dkt. 28 at 3.) Respondents seek dismissal of Petitioner's claims, first arguing that Petitioner's claims were filed prematurely and that the Government is entitled to a presumption that his current detention is reasonable; and, second, arguing that it is significantly likely Mr. Sagastizado will be removed to Mexico. (Dkt. 7 at 10–13.)

The Court first analyzes whether Mr. Sagastizado's current detention is presumed reasonable under the Supreme Court's reasoning in *Zadvydas*. Finding that the presumption does not apply, the Court then analyzes whether Mr. Sagastizado's lawful removal is reasonably foreseeable.

### 1. Presumption of Reasonable Detention

The Court first considers whether Mr. Sagastizado's current post-removal order detention under 8 U.S.C. § 1231(a)(6) is presumed to be reasonable. In *Zadvydas*, the Supreme Court recognized a 6-month period of presumptively reasonable detention for noncitizens detained under 8 U.S.C. § 1231(a)(6):

> In order to limit the occasions when courts will need to make [difficult judgments], we think it practically necessary to recognize some presumptively reasonable

> period of detention. . . . Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period.

533 U.S. at 701 (citations omitted)). However, the Court in *Zadvydas* expressly rejected the idea that "a federal habeas court would have to accept the Government's view about whether the implicit statutory limitation is satisfied in a particular case, conducting little or no independent review of the matter." 533 U.S. 699. The Court instead recognized that "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority" and it is the province of federal courts to answer that question. *Id.* Where *Zadvydas* considered continuous post-removal order detention, Petitioner raises his constitutional and statutory challenges in the context of being re-detained after being released on an order of supervision. (*See* Dkt. 27 at 1–4; Dkt. 7, Attach. 4.) As discussed below, having considered the Supreme Court's reasoning in *Zadvydas* and the current circumstances of this case, the Court finds that a presumption of reasonable detention does not apply to Mr. Sagastizado's current detention.

The Government argues that in order to succeed on his *Zadvydas* claims, Mr. Sagastizado "must first establish that he has been in post order custody for more than six months at the time his habeas petition was filed" and that his claims are premature because "ICE had detained Sagastizado for a total of 126 days when he filed his Petition in this Court on June 25, 2025 (75 days from February 22, 2024, to May 6, 2024, and 51 days from May 6, 2025, to June 25, 2025)."

(Dkt. 7 at 10–11.)³ Petitioner, in turn, explains the presumptive period of reasonable detention has elapsed, noting that 8 U.S.C. § 1231(a)(2)(B) states:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

(Dkt. 27 at 8–9.) Thus, once the 90-day removal period has run the only thing that would reset it to the beginning is a new administratively final removal order, a final order from a reviewing Court of Appeals that had previously entered a stay of removal, or a noncitizen's release from criminal detention or confinement. (*Id*. at 9.) Since none of these apply to Mr. Sagastizado, he argues that "the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1)(A) commenced upon Petitioner's

---

³ Respondents do not cite any controlling precedent or legal support to indicate that six months must have elapsed *at the time of filing* in order for this Court to consider Petitioner's *Zadvydas* claim. (*See* Dkt. 7 at 11). The Court acknowledges that several courts, including the Eleventh Circuit, have interpreted *Zadvydas* as preventing petitioners from bringing claims of prolonged detention pursuant to § 1231(a)(6) until after six months have passed from the issuance of an administratively final order of removal. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002); *see also Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (unpublished); *Al–Shewaily v. Mukasey*, 2007 WL 4480773, at *4 (W.D. Okla. Dec. 18, 2007); *Pisenko v. Keisler*, 2007 WL 3231663, at *2 (E.D. Cal. Nov. 1, 2007); *Nuculovic v. Chertoff,* 2007 WL 1650613, at *3 (M.D. Pa. June 5, 2007); *Francois v. B.I.C.E./D.H.S.*, 2006 WL 3373156, at *5 (D.N.J. Nov. 20, 2006); *Kendy v. Ashcroft*, 2003 WL 21448380, at *2 (N.D. Tex. May 14, 2003); *Hodel v. Aguirre*, 260 F. Supp. 2d 695, 699 (N.D. Ill. 2003). The Court is not persuaded that this presumptively reasonable period is necessarily preclusive rather than rebuttable. *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits.") But, even assuming *Zadvydas* should be read to preclude a petitioner's claims prior to six months detention, the Court is not persuaded that this conclusion extends to this novel context concerning re-detention after supervision. *See Chen v. Holder*, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) (noting that the government's argument that the petition was premature because the petitioner was detained a second time for only an additional five and one-half months was "disingenuous as the danger sought to be addressed by *Zadvydas* was 'indefinite detention' of aliens").

final IJ order on February 22, 2024, and expired on May 22, 2024; the 180-day presumptively reasonable period under 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas* expired over a year ago on August 20, 2024." (Dkt. 27 at 8.)

The Court finds Petitioner's reasoning persuasive. In Mr. Sagastizado's case, his final order of removal was issued, he was granted withholding of removal, his 90-day removal period expired, he was released on an order of supervision for a year, and *then* re-detained by ICE. (*See* Dkt. 1 at 7, Attach. 1; Dkt. 7, Attach. 4.) As stated by the District Court of Maryland in *Zavvar v. Scott*, 2025 WL 2592543 (D. Md. Sept. 8, 2025):

> *Zadvydas* contemplated only the situation in which a noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing, and did not directly address the situation presented here, where a noncitizen was not detained upon the issuance of the removal order, remained on release for over 17 years, and only then was subjected to post-removal order detention for the first time. This distinction is significant because *Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and execute arrangements for removal. Because some if not most of those arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over 17 years—to make the arrangements for removal. Thus, there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period.

2025 WL 2592543, at *4 (internal citations omitted). The reasoning of *Zadvydas* explains why the 180-day period—and therefore the presumption of reasonable detention—does not reset simply because a noncitizen is re-detained. In determining whether post-removal detention is reasonable, the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably

foreseeable, the court should hold continued detention unreasonable and no longer authorized." *Zadvydas*, 533 U.S. at 680.

While the Supreme Court in *Zadvydas* set six months as a reasonable time period of detention in which the Government can be presumed to be working to effectuate removal in good faith, that presumption does not reset at the time a noncitizen is re-detained after being released on an order of supervision during which time the Government could have been taking steps to effectuate the noncitizen's removal. The Court turns to the opinion in *Escalante v. Noem*, 2025 WL 2206113 (E.D. Tex. Aug. 2, 2025) which it finds persuasive on this issue. The *Escalante* court decided a substantively similar case in which a petitioner was previously detained, his 90-day removal period expired, he was released on an order of supervision, and then he was re-detained. 2025 WL 2206113, at *2. The *Escalante* court noted that, following the Supreme Court's ruling in *Zadvydas*, "the immigration regulations were revised to implement administrative review procedures for those aliens detained beyond the removal period, including those who are re-detained upon revocation of their supervised release." *Id*. at *3 (citing *Meighan v. Chertoff*, 2008 WL 1995374, at *2 (S.D. Tex. May 6, 2008)). "These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed. Other cases have indicated the same upon revocation of release." *Id*. (citing *Nguyen v. Hyde*, 2025 WL 1725791 (D. Mass. June 20, 2025); *Tadros v. Noem*, 2025 WL 1678501 (D.N.J. June 13, 2025)). "Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." *Id*. Moreover, as in *Escalante*, "the cases cited by the Respondents placing the initial *Zadvydas* burden with the alien, are not re-detention cases. Therefore, they are not on point for this instant case." *Id*. As such, the court held that respondents had failed to meet their burden to show that removal was reasonably foreseeable,

ultimately granting the petitioner's petition for writ of habeas corpus and ordering release. *Id.* at *3.

Here, Sagastizado's 90-day removal period expired over a year ago and he was re-detained after a year of supervision. (Dkt. 27 at 8.) Based on the Supreme Court's reasoning in *Zadvydas* and the current circumstances of this case, the Court is not persuaded that Petitioner's current prolonged detention is presumed to be reasonable.

The Court also finds that, even if the presumptively reasonable period of detention mentioned by the Supreme Court in *Zadvydas* did reset, as of November 3, 2025, Mr. Sagastizado has been in custody for more than 180 continuous days since his re-detainment by ICE on May 6, 2026. (*See* Dkt. 28 at 4.)[4] Whether Mr. Sagastizado's "6-month presumptively reasonable period of detention" ended 180 days after the date of the issuance of his administratively final removal order (August 20, 2024), after 180 days of his cumulative detention (August 19, 2025), or after 180 days of detention since his most recent arrest (November 2, 2025), the post-removal presumptive period of reasonable detention set out in *Zadvydas* has elapsed.[5]

---

[4] The Court also notes that other courts in this district have found "nothing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed." *Villanueva v. Tate*, 2025 WL 2774610, at *9 (S.D. Tex. Sept. 26, 2025); *see also Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D. N.J. 2025) (recognizing that the *Zadvydas* presumption is rebuttable and that "[t]o hold otherwise would condone detention in cases where removal is not reasonably foreseeable or even functionally impossible, so long as it did not exceed six months." (citation omitted)); *but see Andrade*, 459 F.3d at 543 (noting that "*Zadvydas* thus created a '6–month presumption' of the validity of detention under § 1231, after which an alien could attack the reasonableness of his continued detention" but deciding the case on other grounds).

[5] In cases in which noncitizens are re-detained, courts across the country have accounted for this presumptively reasonable period in different ways. *See, e.g.*, *Tadros*, 2025 WL 1678501 (finding 6-month presumption had lapsed while petitioner was on supervised release); *see e.g. Abuelhawa, v. Noem, et al*, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them" (citing *Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025); *Nguyen v. Scott*, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025); *Escalante*, 2025

### 2. Reasonable Foreseeability of Lawful Removal

The Court now turns to whether Mr. Sagastizado's removal is reasonably foreseeable as is required for his continued detention under § 1231(a)(6). *See Zadvydas*, 533 U.S. at 699. The core responsibility of the habeas court in interpreting whether post-removal order detention is authorized under § 1231(a)(6) is to "ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. Conclusory, statements suggesting that removal is not likely in the reasonably foreseeable future are insufficient to make this showing. *Andrade*, 459 F.3d at 543–44. Once the noncitizen demonstrates good reason to believe that removal is not reasonably foreseeable, the government must provide "evidence sufficient to rebut that showing" or release the noncitizen. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

Here, Mr. Sagastizado has shown that his lawful removal is not reasonably foreseeable and therefore no longer statutorily authorized under § 1231(a)(6). Petitioner filed his Motion for Preliminary Injunction on September 12, 2025. (Dkt. 20.) After briefing and argument, the Court granted a Motion for Preliminary Injunction on October 2, 2025, finding that Petitioner has a due process right to an IJ review of his denied RFI. (Dkt. 26.) The Court ordered "that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby ENJOINED from removing Petitioner from

---

WL 2206113, at *3; *Diaz-Ortega v. Lund*, 2019 WL 6003485, *7 n.6 (W.D. La. Oct. 15, 2019), *Hamama v. Adducci*, 2019 WL 2118784, at *3 (E.D. Mich. May 15, 2019); *Sied v. Nielsen*, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen*, 2015 WL 13236635, at *2; *but see Guerra-Castro v. Parra*, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding the six-month period could start upon the most recent date the noncitizen was taken into custody.)).

the continental United States until seven (7) days after an Immigration Judge reviews Petitioner's denied Reasonable Fear Interview, and only if the Immigration Judge affirms such denial." (*Id*. at 31.) Respondents do not appear to have scheduled Petitioner for an IJ hearing, nor have they committed to do so. (*See* Dkt. 28, Attach. 1.) Petitioner remains detained at the Webb County Detention Center, with no indication as to when or if he will be lawfully removed to a third country. (Dkt. 28 at 2.)

IJ review of Petitioner's denied RFI is long overdue. *See Escalante*, 2025 WL 2206113, at *4 (finding that Respondents failed to demonstrate a reasonably likelihood of removal where it had been six weeks since Petitioner had expressed a fear of removal to Mexico and yet no interview had been caried out). The regulations controlling the Reasonable Fear Interview process—which the Court recognized do not directly apply to Petitioner but nonetheless provide a relevant analogy to Petitioner's current circumstances—require that an IJ review be carried out within ten days of referral, absent exceptional circumstances. (*See* Dkt. 26 at 22); *see also* 8 C.F.R. § 1208.31(g); *see also* 8 C.F.R. § 1003.42(e) (requiring IJ reviews of denied Credible Fear Interviews "to the maximum extent practicable within 24 hours, but in no case later than 7 days[.]"). Mr. Sagastizado requested IJ review of his denied RFI on September 8, 2025. (Dkt. 15, Attach. 5.) It has been well over the standard timeline for conducting IJ review of a denied RFI. Thus far, Respondents have not demonstrated that they have taken steps to lawfully remove Petitioner to Mexico; Respondents have yet to commit to IJ review of Petitioner's denied RFI, nor is there any evidence that progress has been made towards Petitioner's lawful removal. (*See* Dkt. 28, Attach. 1) (noting that Respondents have nothing specific to report regarding Petitioner's foreseeable removal.) Without providing for IJ review of the RFI in compliance with

the Court's injunction, there is no possibility for lawful removal of Mr. Sagastizado to Mexico.[6] Respondents have to yet to demonstrate their intent to provide this review. Moreover, Respondents have not presented any evidence of their intent to remove Mr. Sagastizado to other third countries, nor have they indicated that they have taken any new steps to remove Mr. Sagastizado in the reasonably foreseeable future.

Some possibility of an eventual removal is not the same as a significant likelihood that removal will occur in the reasonably foreseeable future. *See Escalante*, 2025 WL 2206113, at *4 (citation omitted). Thus, the Court finds that there is not a significant likelihood that lawful removal will occur in the reasonably foreseeable future, as is required for continued detention under 8 U.S.C. § 1231(a)(6). *See Zadvydas*, 533. U.S. at 701. Petitioner's current detention is, therefore, no longer authorized by statute.

## Conclusion

The Court now grants Petitioner's writ of habeas corpus on the basis of the first, second, and third claims brought in his Petition, (Dkt. 1), that pertain to whether his continued post-removal detention under 8 U.S.C. § 1231(a)(6) is statutorily and constitutionally permitted.

---

[6] Moreover, even if IJ review does occur in the near future, "Petitioner may succeed on his reasonable fear claim taking Mexico off the table for removal." *Escalante*, 2025 WL 2206113, at *4. Further, the fact that Petitioner challenges his removal to Mexico does not provide a reason to deny his claims. *See Andrade*, 459 F.3d 538 (deciding petitioner's prolonged detention claims based on the foreseeability of his removal rather than on the basis of petitioner's own challenges to his removal); *Diaz-Ortega v. Lund*, 2019 WL 6003485, at *12 (W.D. La. Oct. 15, 2019) (discussing *Andrade*).

The Court refrains from deciding the remaining fourth, fifth, and sixth claims brought in his initial Petition, as those claims have not yet been argued before this Court and therefore remain pending at this time.

The Court has considered Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Dkt. 1.) For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**. Respondents Motion to Dismiss (Dkt. 7) is **DENIED**. Where Petitioner requested relief in the form of being released, and where the Court has considered his request for such relief in the context of his Petition for Writ of Habeas Corpus, Petitioner's Motion for Specific Performance (Dkt. 28) is **DENIED** as moot.

Respondents are hereby **ORDERED** to immediately release Petitioner from custody subject to reasonable conditions of supervision. Respondents are hereby **ORDERED** to notify Petitioner's counsel of the exact time and location of his release **no less than three hours** prior to releasing him. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time on Monday November 17, 2025**.

IT IS SO ORDERED.

SIGNED this November 14, 2025.

Diana Saldaña
United States District Judge